HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

INX, LLC,

        Plaintiff,

    v.

MUSIC GROUP SERVICES U.S., INC.,

        Defendant.

CASE NO. C13-2126RAJ

ORDER

This matter comes before the court on Plaintiff INX, LLC's motion for issuance of writ of attachment. Dkt. # 11. On December 19, 2013, the court entered a temporary restraining order ("TRO") based on the facts presented with the TRO briefing[1] that enjoined defendant Music Group Services U.S., Inc. from selling, transferring, encumbering, disposing of, or otherwise altering its interest in the property located at 2501 Western Ave, Seattle, Washington. Dkt. # 21 at 7. The TRO remains in effect until the court resolves the attachment motion. *Id.*

---

[1] Contrary to plaintiff INX, LLC's assertion that the court's ruling on the TRO motion should apply as law of the case here, the court disagrees. In that order, the court specifically noted that defendant did not respond to plaintiff's substantive arguments, and therefore, plaintiff's version of the facts was undisputed "for purposes of [that] order." Defendant was provided a few days to respond to the TRO motion, as opposed to the normal briefing schedule on the motion for writ of attachment. Accordingly, the court has considered the evidence submitted by both parties regarding the writ of attachment motion.

ORDER - 1

Federal Rule of Civil Procedure 64 provides: "At the commencement of and throughout an action, every remedy available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies." Fed. R. Civ. Proc. 64(a). To prevail on a motion for issuance of prejudgment writ of attachment, plaintiffs must establish that (1) there is probable cause to believe that the alleged statutory ground for attachment exists, and (2) the probable validity of the claims. RCW 6.25.070(1); *see L.C. v. Gilbert*, Case No. C09-5586 BHS, 2010 WL 2650603 (W.D. Wash. 2010).

**A. Probable Cause regarding Statutory Grounds for Attachment**

Under Washington law, a plaintiff may obtain a prejudgment writ of garnishment if the writ is issued for a purpose other than garnishing a defendant's earnings "(a) on the ground that an attachment has been issued in accordance with chapter 6.25 RCW, (b) on the ground that the plaintiff sues on a debt that is due and owing and unpaid, or (c) on one or more of the grounds for issuance of attachment stated in RCW 6.25.030 or 6.25.040." RCW 6.26.010. Section 6.25.030 allows the court to issue a writ of attachment on the grounds that, among others, "the object for which the action is brought is to recover on a contract, express or implied[.]" RCW 6.25.030(10).

Here, INX has brought this action to recover debts and obligations owed by defendant to plaintiff pursuant to various agreements between the parties. Dkt. # 12 (Hedgecock Decl.) ¶ 4. Defendant contractually agreed to pay INX for its services, and failed to do so. *Id.* ¶¶ 6-19., Exs. A-C. Defendant does not dispute that this action is brought to recover on a contract. Dkt. # 24.

Accordingly, the court finds probable cause that statutory grounds for issuing a prejudgment writ of attachment exists.

**B. Probable Validity of Claim**

"Generally, a plaintiff in a contract action must prove a valid contract between the parties, breach, and resulting damage." *Lehrer v. State, Dept. of Social & Health Servs.*, 101 Wash. App. 509, 516, 5 P.3d 722 (Wash. App. 2000).

The court has two contracts before it: (1) a Security Consulting Remediation agreement ("Remediation Contract") to "engage in scanning of the network and identifying malicious traffic, back doors and security best practices" and to restore the IT environment; and (2) a System Engineering Support agreement ("Engineering Contract") to "engage in providing systems engineering support following an IT security breach[,]" the goal of which was "to restore IT services as quick as possible and in a secure fashion." Dkt. # 12-1 & 12-3 at 5 (Exs. A & C to Hedgecock Decl.). Under the Remediation Contract, the scope of work included assisting the engineering team on the ground, scanning networks and servers as the services are returned back to production, scanning networks looking for back doors and remote control, reviewing configurations and administrative access, and providing hardening recommendations to the team. Dkt. # 12-1 at 5 (Ex. A to Hedgecock Decl.). Under the Engineering Contract, the scope of work was limited to general systems engineering and administrative support. Dkt. # 12-3 at 5 (Ex. C to Hedgecock Decl.).

Both contracts contain what appears to be identical terms and conditions, including, among others, a requirement that payment be made within thirty days of the invoice (§ 5.1), a limitation of liability provision (§ 5.6), a choice of law provision identifying the laws of Texas as the substantive law to be applied (§ 5.12), and a miscellaneous provision indicating that the contract constitutes the entire agreement of the parties and supersedes all prior written or oral agreements, representations and understandings relating to the subject matter of the contract (§ 5.15). Dkt. # 12-1 & 12-3 at 7-8 (Exs. A & C to Hedgecock Decl.).

Plaintiff has provided evidence that the parties entered into valid agreements, plaintiff performed the services pursuant to the contracts, defendant failed to pay plaintiff for those services, and that defendant's failure to pay resulted in damages. Dkt. # 12 (Hedgecock Decl.) ¶¶4-21, Exs. A-C; Dkt. # 13 (Crook Decl.) ¶¶ 3-4.

Defendant argues that its counterclaims show that its non-payment is a result of the misrepresentations and failure to perform by plaintiff.[2] Dkt. # 24 at 4. Defendant has submitted evidence that it hired plaintiff to investigate, restore and maintain services on its computer networks after a cyber attack. Dkt. # 25 (Enciso-Villegas Decl.) ¶¶ 2-3. Defendant also contends that after several weeks passed and it became apparent that plaintiff could not effectively provide the services for which they were engaged, defendant used an outside service provider that was able to restore the required partial functionality to defendant's computer network within three days. *Id.* ¶ 3. Defendants contend that plaintiff failed to fulfill its obligations under the agreements. *Id.* ¶ 4. However, defendant has not identified what obligations plaintiff failed to perform, how or why defendant determined that "it became apparent" that plaintiff could not effectively provide services, or any other action or inaction taken by defendant or plaintiff.

Nevertheless, it appears that defendant complains of the timeliness of service and the cost. However, the Remediation Contract does not contain a clause with respect to duration or timeliness of service, and the Engineering Contract provides only that "the goal" is to restore IT services "as quick as possible and in a secure fashion." *Cf.* Dkt. # 12-1 at 5 *with* 12-3 at 5 (Exs. A & C to Hedgecock Decl.). With respect to pricing, both contracts contain an estimated hours for pricing, and note that actual hours will be billed and that additional hours may be required to complete the outlined scope of work. Dkt. # 12-1 at 6 & 12-3 at 5 (Exs. A & C to Hedgecock Decl.). Both contracts also provide that

---

[2] The court notes that counterclaims and affirmative defenses in pleadings are not evidence.

the agreement "constitutes the entire agreement of the parties and supersedes all prior written or oral agreements, representations and understandings relating to the subject matter[.]" Based on the evidence in the record, there does not appear to be factual support at this time for defendant's conclusion that plaintiff failed to perform its obligations.[3]

In contrast, the evidence before the court indicates that plaintiff has demonstrated the probable validity of its claim for breach of contract. *See* Dkt. # 12 (Hedgecock Decl.) ¶¶4-21, Exs. A-C; Dkt. # 13 (Crook Decl.) ¶¶ 3-4.

Accordingly, the court finds that attachment is proper. Nevertheless, defendant requests that the court order a cash deposit into the court registry of $350,000, rather than attach its property that is valued at over $2 million. Although plaintiff previously believed that $350,000 was a reasonable estimate of damages and attorney's fees, it now suggests that the court consider a larger amount in light of defendant's amended answer, which, according to plaintiff, added an additional claim, expanded the scope of its two other counterclaims, and alleged for the first time more than $869,000 in damages.[4] Plaintiff notes that under Texas law, attorney's fees are recoverable in contract actions. Dkt. # 27 at 7 (citing Tex. Civ. Prac. & Rem. Code § 38.001).

Given that defendant appears to prefer a cash deposit, the court is going to hold in abeyance a writ of attachment at this time. The parties are to meet and confer to determine an appropriate amount of cash deposit or unconditional bond sufficient to

---

[3] The court emphasizes that its conclusion is limited to the evidence before the record on this motion for writ of attachment. For instance, defendant has not provided any evidence that would support its conclusion that plaintiff breached the agreement or that defendant was otherwise excused from performing its obligations under the agreement.

[4] The court notes that the limitation of liability provision in both contracts appears to limit any potential liability of plaintiff to the amount which has been actually paid to plaintiff by defendant for services and/or performance under the contract. Dkt. # 12-1 & 12-3 at 7 (Exs. A & C (§5.6) to Hedgecock Decl.). However, since the parties have yet to provide briefing on this issue, the court reserves a determination on this issue for another day.

ensure judgment. The parties shall meet and confer no later than January 10, 2014. The parties shall follow the procedure outlined in Local Civil Rule 37 for expedited resolution, except that they shall follow this briefing schedule: Plaintiff's introductory statement shall be provided to defendant no later than 5:00 p.m. on January 14, 2014, and defendant's response shall be provided to plaintiff no later than 5:00 p.m. on January 16, 2014. Plaintiff may provide a reply. However, the parties shall file the joint submission no later than 5:00 p.m. on January 17, 2014.

**C. Conclusion**

For all the foregoing reasons, the court GRANTS plaintiff's motion for writ of attachment. However, the court will not enter the writ until after the court reviews the joint memoranda from the parties. The TRO will remain in effect until further order of the court.[5] Dkt. # 21. After the court reviews the parties' joint memoranda, the court will determine whether it will enter the writ and determine the amount of bond it will require plaintiff to post, or whether it will order a cash deposit or unconditional bond in lieu of the writ.

Dated this 7th day of January, 2014.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

---

[5] This order supersedes the court's prior order in which it stated that the TRO would automatically dissolve upon resolution of the motion for writ of attachment.